IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL No. 1:15CR00172-05 |
| v. ) | |
| ) | Sentencing Date: April 8, 2016 |
| Brian K. Hendrix ) | |
| Defendant ) | The Honorable T.S. Ellis, III |
| _____ ) | |

POSITION OF THE DEFENSE
WITH RESPECT TO SENTENCING FACTORS

In accordance with this Court's policy regarding guideline sentencing and §6A1.2 of the United States Sentencing Guidelines and Policy Statements, Counsel for the Defendant hereby represents that he and his client have reviewed the Probation Officer's report and that there are no objections to the calculation of sentencing factors. The Defense agrees with the government that the Probation Officer's calculations are technically correct, resulting in an Offense Level Total of 45 and a Criminal History Category I, resulting in a Guideline Range of Life.

The Defendant argues, however, that the 18 U.S.C. §3553(a) factors suggest that the Court should consider a much lower sentence; it is our position that the facts and circumstances of both Mr. Hendrix' criminal acts, the prosecution of his case and the sentences given to his co-defendants make a life sentence excessive; while Mr. Hendrix must receive at least the 180-month mandatory minimum, the Court certainly has discretion to order a variance if the Court does not believe that the Sentencing Guidelines provide for a fair sentence. *See, e.g., Spears v. United States, 555 U.S. 261 (2009); Gall v. United States, 552 U.S. 38 (2007); Kimbrough v. United States, 552 U.S. 85 (2007); Pepper v. United States 131 S.Ct. 1229 (2011); Williams v. New York 337 U.S. 241 (1949), United States v. Pauley, 511 F.3d 468 (4th Cir. 2007).* Given that the ringleader is serving a ten-year sentence in South Africa and six other co-defendants have been sentenced in this Court to far less than the life sentence suggested for Mr. Hendrix, it is difficult to argue that the Sentencing Guidelines are fair.

**Sentencing Factors**

There is no question that those who prey on children must be stopped. No one, including the Defendant, thinks that what happened in this case is acceptable behavior in any society, especially ours. These men conspired to entice vulnerable children to expose themselves and engage in sexual conduct online by posing as other vulnerable children doing the same thing; few crimes are more worthy of serious punishment. But that does not relieve us of the responsibility to consider the context of the case. Toward that end, we respectfully suggest that the Court consider all of the factors delineated in 18 U.S.C. §3553(a) and sentence Mr. Hendrix to a sentence at or below the 216 months given to Mr. Zwengel and Mr. Hitosis.

The nature and circumstances of Mr. Hendrix' offense and his own history and characteristics are not substantially different from those of his co-defendants. Mr. Hendrix was found guilty of engaging in a conspiracy to entice minors to expose themselves and engage in sexual conduct by posing as minors who exposed themselves and engaged in sexual conduct. As the government notes on page 9 of their sentencing memorandum, the conspirators' roles were all very similar. We would ask the Court to consider that while the government has chosen not to engage in ranking the defendants from most culpable to least culpable, both the number of files recovered from Mr. Hendrix' computer and the contribution table presented by the government at trial suggest that Mr. Hendrix was much less active in this conspiracy than his co-defendants.

As for Mr. Hendrix' own history and characteristics, we respectfully argue that they are no different from those of Mr. Zwengel and Mr. Hitosis. He has no criminal history; before this case he has never been so much as accused of committing any other crime. He was born into modest circumstances in Tennessee, and, as an adult, has been a valued employee, husband and father. His life in the years in between, characterized by abuse, neglect and dropping out of school following the 8th grade, suggest that he might be less culpable for his actions in this case, not more. There is simply nothing in his personal history that suggests a 30 year sentence, let alone the life sentence suggested by the Guidelines.

Indeed, with similar offense conduct and personal histories, the other factors delineated in 18 U.S.C. §3553(a) support the Defense, not the government. If 216 months is sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public and provide Mr. Zwengel and Mr.

Hitosis with needed educational or vocational training, medical care or other correctional treatment, it is certainly enough for Mr. Hendrix.

**Unwarranted Sentencing Disparities and Acceptance of Responsibility**

With similar records and similar offense conduct, that leaves but one difference between Mr. Hendrix and his co-defendants – he went to trial, and they did not. The real question before the Court, then, is whether the government's suggested sentence would be the very kind of unwarranted sentencing disparity 18 U.S.C. §3553(a)(6) seeks to avoid, or a fair representation of the higher culpability assigned to those who fail to accept responsibility for their actions.

The government argues that Mr. Hendrix did not accept responsibility, and that forcing the government to prove their case at trial warrants a much longer sentence than those given to his co-defendants. This argument, however, flies in the face of the confession they produced at trial and the Application Notes provided with the Sentencing Commission's definition of Acceptance of Responsibility in §3E1.1. As the Commission states in Application Note 2, "conviction by trial…does not automatically preclude a defendant from consideration for such a reduction." "In each such instance," the Commission notes, "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct."

Mr. Hendrix' pre-trial statements and conduct all show an acceptance of his guilt. When confronted by the agents searching his home, Mr. Hendrix agreed to speak with agents in a conversation that was captured on audiotape and later transcribed. In that conversation, presented by the government at trial, Mr. Hendrix admitted that he was, in fact, the user known as "Bosh" and that he was a member of one of the illegal websites. He further admitted that the thumb drives and portable hard drives containing many of the illicit files linked to him were his. This is precisely the kind of "truthfully admitting the conduct comprising the offense(s) of conviction" that the Guideline Commission writes about in §3E1.1, Application Note 1(A). He also made this confession during the first contact he had with law enforcement in this case, months before his indictment, arrest or trial, certainly the kind of timely manifestation of acceptance the Commission writes about in Application Note 1(H).

Furthermore, the evidence presented by the government proves that Mr. Hendrix did not engage in this behavior after the government terminated the illegal websites several months before serving the search warrant at Mr. Hendrix' home, something we respectfully argue amounts to the

"voluntary termination or withdrawal from criminal conduct" described in Application Note 1(B). While Mr. Hendrix did not unlock the box containing the computer media containing the illegal files, the agents searching his home admitted at trial that they never asked for his help. And the Defense is ready to endorse the restitution order previously calculated by the government, satisfying Application Note 1(C).

The government further argues that the trial involved testimony of one minor and the parents of other minors, burdens on innocent parties that they believe justify years of incarceration. The government fails to mention, however, that the Defense agreed to significant stipulations to eliminate the need for the victims and their parents to testify at all, and that we agreed to let the one minor witness carry her teddy bear to the witness stand before accepting her testimony without cross-examination. Other stipulations were made to eliminate the need for records custodians and victims' parents to appear at all. And Mr. Hendrix did not take the stand and falsely deny his guilt.

The most compelling argument the government makes in this regard is the one they end with – that the theory presented by at trial involved "blaming the leader of the conspiracy, known as Alfie, for the defendant's conduct through a theory that Alfie remotely accessed the defendant's computer." This is likewise not a justification for a longer sentence than the co-defendants have already received, as Mr. Hendrix did not, in the language provided in §3E1.1 states, "falsely deny… or frivolously contest" the relevant conduct. Mr. Hendrix did not testify and present that argument, Counsel did. And as the Court instructed the jury in this case, and indeed in every case, the arguments of counsel are not evidence. Counsel are duty-bound to zealously argue their cases at trial, and given the evidence presented by the government that argument was not frivolous. As the Court remarked on the second day of deliberations, that argument was made by Counsel and "turned some heads" in the jury box.

In short, the government contends that Mr. Hendrix committed the same acts as his co-defendants and is approximately equally culpable, but his inability to enter a plea before trial warrants a sentence that is a decade longer than what others have already received. In addition to the arguments listed above, Counsel would like to present the Court with a final counter-argument. Mr. Hendrix is a simple man, one with limited means, limited education and a history of depression, substance abuse, pornography addiction and suicidal ideations, depending on Counsel to advise him in a case that would change his life. In the days before trial, Counsel and the

government engaged in one last good-faith effort to settle the case. Shortly after discussing these final efforts with Counsel, an FBI agent knocked on Mr. Hendrix' door to question him – in violation of his Constitutional right to counsel. *See, e.g., Email message from FBI Special Agent John McMurtrie,* attached. Mr. Hendrix was having enough trouble coming to grips with his situation and trying to understand the complexities of a plea agreement and the Sentencing Guidelines before this egregious violation, and the next several days were spent trying to repair the attorney-client relationship; trusting the U.S. Attorney and the FBI to respect his Constitutional rights, let alone negotiate in good faith, was impossible. If the government is looking to assign blame for Mr. Hendrix' failure to reach an agreement with them and plead guilty before trial, their own investigating agent should be at the top of their list.

**Conclusion**

The government agrees in their memorandum that the Guideline Range of life is excessive, and they ask the Court to consider a sentence commensurate with the 30-year statutory maximum for Count 1. Given the 216 and 228 month sentences given to other co-defendants with similar criminal records and offense conduct the government agrees is largely the same, we respectfully assert that Mr. Hendrix should be given the same consideration.

The only real difference between Mr. Hendrix and those other co-defendants is the fact that he chose to go to trial rather than plead guilty beforehand. Though the government contends this amounts to denying any responsibility for his actions and thus warrants a much longer sentence, Mr. Hendrix, in fact, had terminated his illegal conduct months before the government knocked on his door, at which time he cooperated with the government's search warrant and confessed to the government's *prima facie* case. In the days before trial, Mr. Hendrix agreed to stipulations that spared his victims, their parents and several other civilian witnesses from having to attend his trial, let alone testify, and he did not deny his guilt in any way. The arguments made to the contrary were made by Counsel as part of his sworn duty to defend his client's interests, and they had enough plausible support in the evidence presented by the government to "turn heads" among the jurors. Mr. Hendrix' inability to agree to a plea was based in the enormity of the situation, his shame in having victimized innocent children and a troubled personal history; an unwelcome visit from one of the investigating agents at a critical juncture made further negotiations impossible. He

should not have to shoulder the burden of inconveniencing the Court, the jury, the government and their witnesses – at least not by himself.

      We respectfully ask that the Court sentence Mr. Hendrix to the same sentence Mr. Zwengel and Mr. Hitosis received – 216 months – and we ask that the Court suggest a designation to FCI Forest City in Arkansas or another low-security facility close to his son where he can enter into and complete the Bureau of Prisons' 500 Hour Residential Drug Addiction Program.

                                                                          Respectfully Submitted,

                                                                          _____/S/_____
                                                 Gregory T. Hunter
                                                 Virginia State Bar Number 45489
                                                 Attorney for the Defendant
                                                 2055 North 15th Street
                                                 Suite 302
                                                 Arlington, Virginia 22201
                                                 (703) 527-0808 telephone
                                                 (703) 527-0810 facsimile
                                                 greghunter@mail.com

Attachments:
E-mail message from FBI Special Agent John McMurtrie
Letters of support from the Defendant's mother, ex-wife and brother

CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on the 6th day of April, 2016, an exact copy of the foregoing Position of the Defense with Respect to Sentencing Factors was filed with the Clerk of the Court using the CM/ECF system, causing a Notice of Electronic Filing to be served upon:

Tracy Doherty-McCormick, Esquire
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700 telephone
(703) 299-3980 facsimile
Tracy.D.McCormick@usdoj.gov

Lauren Britsch, Esquire
Special Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700 telephone
(703) 299-3980 facsimile
Lauren.Britsch2@usdoj.gov

Copies of this document have been forwarded to the following non-filing users:
By electronic mail:
  Nina Blanchard
  Senior United States Probation Officer
  United States Probation Office for the Eastern District of Virginia
  10500 Battlefield Parkway, Suite 100
  Manassas, Virginia 20109
  (703) 366-2100 telephone
  Nina_Blanchard@vaep.uscourts.gov

By personal service:
  Brian K. Hendrix
  Defendant
  Alexandria Adult Detention Center

              _____/S/_____
              Gregory T. Hunter
              Virginia State Bar Number 45489
              Attorney for the Defendant
              2055 North 15th Street
              Suite 302
              Arlington, Virginia 22201
              (703) 527-0808 telephone
              (703) 527-0810 facsimile
              greghunter@mail.com